32 N.J. Super. 115 (1954)
107 A.2d 819
UNITED STATES FIDELITY & GUARANTY COMPANY, A CORPORATION LICENSED TO DO BUSINESS IN THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
VICTORIA DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 28, 1954.
Decided September 15, 1954.
*118 Before Judges JAYNE, STANTON and HALL.
Mr. Thomas L. Zimmerman argued the cause for appellant (Mr. Robert W. MacQuesten on the brief).
Mr. Milton Lowenstein argued the cause for respondent (Messrs. Lowenstein & Cohen, attorneys; Mr. Melvin B. Cohen, of counsel).
The opinion of the court was delivered by HALL, J.S.C. (temporarily assigned).
This is an appeal from a judgment entered against the defendant in the amount of $247.27 in the Essex County District Court following a trial without a jury. The cause of action sued on was based on an agreement of indemnity given by defendant to plaintiff in connection with the latter's issuance of a fidelity bond covering the defendant as assistant tax collector of the Borough of Beach Haven.
An earlier trial in the same tribunal resulted in a judgment for plaintiff in a smaller amount, which was reversed by this court because of the absence of proof of the condition of the bond and breach thereof, and the case remanded for a new trial. 21 N.J. Super. 405 (1952). The defendant was granted certification by the Supreme Court on her contention that entry of judgment in her favor should have been directed on the appeal. The Supreme Court held that a new trial was proper. 12 N.J. 365 (1953). The judgment now appealed from resulted from the trial so ordered.
We take judicial notice of the fact that the Borough of Beach Haven is a seaside resort and that it is governed by a board of commissioners. So it would appear that its governmental structure is prescribed by R.S. 40:117-1 et seq., originally enacted as L. 1884, c. 140, the provisions of which, it will be noted, are rather sparse, and the later statute known *119 as the "Commission Form of Government Law," or more commonly as the Walsh Act, R.S. 40:70-1 et seq., L. 1911, c. 221, and the general laws applicable to all municipalities.
The following facts were found by the court below at the second trial, which we hold are amply supported by the evidence:
In 1947 one Charles M. Cramer was a member of the borough board of commissioners and director of revenue and finance. He also was, nominally at least, tax collector, although substantially all of the duties of this office were performed by assistants. (In passing, we comment that there may well be doubt as to his right to hold the office under chapter 117 of Title 40 where an elected tax collector is provided for (R.S. 40:117-2), or even under the Walsh Act (see R.S. 40:72-7), but we think it unnecessary to decide the question.) At a meeting of the board of commissioners held March 21, 1947 he announced that he had appointed the defendant as assistant tax collector, water clerk, sewer clerk and tax search officer.
A few days earlier the defendant had made written application to the plaintiff for a fidelity bond covering her as "Assistant Tax Collector," in which application she stated that, in consideration of the execution of the bond applied for, she promised to pay the annual premium therefor and for any continuation thereof and agreed
"to protect and indemnify the Company against any loss, damage or expense including court costs and counsel fees or any liability therefor incurred by it by reason of the execution thereof. Any payments made in good faith by the Company on account of any such liability, whether or not it is actually liable therefor, shall be conclusive evidence of any liability thereunder."
The bond was issued on March 15, 1947, for a one-year term, and thereafter renewed for the two following years. The defendant's office was described therein as "Assistant Tax Collector" and the undertaking was properly conditioned that the defendant "shall well and faithfully perform all the duties of his (sic) said office." She continued in the office until *120 her resignation on September 15, 1949, and had various people assisting her during her term of service.
The State Division of Local Government made an audit of the borough accounts as of the date of resignation and found small shortages in the tax, water and sewer accounts which it recommended be collected and deposited to the credit of the borough. This was followed later by a formal audit report in July 1950 which showed due from the defendant the amount now represented by the judgment under review. Thereafter, the municipality apparently demanded payment thereof from the plaintiff under the bond covering the defendant. The plaintiff communicated with defendant about the matter and she replied by letter dated November 13, 1950, in which she expressly did not deny the shortages, but indicated that errors causing them constituted honest mistakes by her assistants and herself, for which she disclaimed responsibility.
At this point we interrupt recital of the facts to point out that there is no evidence or claim of any defalcation or embezzlement on the part of the defendant. The lower court expressly so found and counsel for the plaintiff agreed at the oral argument. The situation seems to have been one of loose and inefficient business methods and practices rather than of dishonesty.
The plaintiff paid the borough, in January 1951, the amount now sued for, following verification thereof to it from the Director of the Division of Local Government. The evidence below warranted the district court in finding that the payment of the claim in full was not made for "agency," good-will, or "nuisance value" reasons, but by reason of actual shortages, officially reported, indicating the surety's probable liability under its bond. Plaintiff thereafter demanded reimbursement from the defendant under the indemnification agreement, and the present suit followed.
The lower court made conclusions of law to the effect that the defendant had breached the condition of her bond in that she had not faithfully performed her duties by failing *121 to turn over to her successor the amount shown by the books to be due, regardless of the fact that the shortage might be due to honest mistakes or faulty bookkeeping; that she was responsible for the shortages in the water and sewer accounts as well as in the tax account, since handling of all was part of her duties; that she was responsible for the acts and errors of her subordinates; and that the plaintiff had paid the borough on the bond in good faith and so was entitled to recover from the defendant under the terms of the contract of indemnity.
The defendant urges as reasons for reversal that the judgment is contrary to the weight of the evidence in that no proof was offered by the plaintiff establishing a breach of the condition of the bond and insufficient proof to warrant a finding of good faith in making the payment to the borough, and further that the tax collector himself is responsible for the shortages and not his assistant, the defendant. We do not agree.
This court, in its earlier opinion in this cause, established the law of the case that, in order to ground recovery under the indemnity agreement, there must be proof that the shortages constituted a breach of condition establishing an actual or asserted liability on the bond. 21 N.J. Super., at pp. 407-408. We think the evidence at the second trial was adequate to establish this. As we have said, the undertaking was conditioned upon the well and faithful performance of all of defendant's duties of assistant tax collector. By virtue of R.S. 40:117-3, the tax collector of such a municipality "shall act as treasurer, * * * and [shall] possess the powers, perform the duties and be subject to the same penalties as collectors in townships." The statute relative to the latter, in his capacity as treasurer, states that "he shall be the custodian of the moneys of the township, and all moneys which the township committee are by law authorized to receive and disburse shall be paid to him and disbursed only on the order of the township committee." R.S. 40:145-14. He has the further obligation to, "whenever required so to *122 do, and at the end of his term of office, account to the township committee for the moneys received by him as such treasurer, and on demand pay over the unexpended balance in his hands to his successor in office." R.S. 40:145-16. The same scope of duty is discernible under the Walsh Act. See R.S. 40:72-4, 5, 6 and 7. The bond here sufficiently complied with the statute prescribing the form and conditions thereof. L. 1940, c. 257, L. 1947, c. 118; N.J.S.A. 54:4-122.2 and 122.4. Responsibility would thus extend to the water and sewer account funds as well as the tax moneys and other revenues.
The obligation of a collector-treasurer to account and pay over is an absolute one, regardless of the cause of the shortage. This rule has long been established in this State. Inhabitants of the Township of New Providence v. McEachron, 33 N.J.L. 339 (Sup. Ct. 1869), affirmed 35 N.J.L. 528 (E. & A. 1871). Here the evidence is plenary, by the official audit of the state agency, that there was an actual shortage and consequently a loss to the borough. Hoboken v. Kamena, 41 N.J.L. 435 (Sup. Ct. 1879), cited by the defendant, is not factually pertinent.
Nor is it a basis of defense here that the defendant was only the assistant tax collector and so, ipso facto, the assistant treasurer. We have already adverted to the fact that the collector was really such in name only and might well not even be legally able to hold the title to the office. It is clear that the defendant, despite the name given to her position, was the person actually in charge of the office and performed substantially all of the functions thereof. She was at least the de facto holder of the office and, therefore, subject to the same duties and obligations as if she were the de jure collector. She could not refuse to account to the borough on the basis that her actions were only de facto, and her surety could not deny liability on its bond on that ground. Hoboken v. Harrison, 30 N.J.L. 73 (Sup. Ct. 1862). See Seiple v. Borough of Elizabeth, 27 N.J.L. 407, 410 (Sup. Ct. 1859). We further think that it is of no avail to the defendant that the tax collector himself might also have been *123 held for the shortages, even under the circumstances which here existed, but we find it unnecessary to express any opinion as to any possible liability of his to any party.
Moreover, the defendant and her surety are responsible for the acts or omissions of her subordinates. The rule is well stated in 4 McQuillan, Municipal Corporations 201 (3rd ed. 1949), where it is said:
"* * * it is the general rule that a bond of a municipal official, general in its terms and covering the entire administrative duties of his office, covers and includes all acts of his deputies and assistants done within the scope of their authority the same as if performed by the officer personally, although he might have been ignorant of their conduct."
This principle is carried into our statute prescribing the conditions of collectors' bonds. L. 1940, c. 257, L. 1947, c. 118; N.J.S.A. 54:4-122.2 and 122.4.
The condition of this bond is sufficiently broad, especially in the light of the statute just cited, to cover all shortages in the office administered by her, including those due to the fault of other personnel therein. We feel that the plaintiff could definitely have been held liable on its obligation for these shortages at the suit of the municipality.
This court, in its prior opinion, also laid down as the further law of the case that the proofs must demonstrate that the payment by the plaintiff to the borough was made in good faith "on account of its liability." We are satisfied that the proofs, previously detailed herein, adequately establish this requisite characteristic of the payment, for, as we have said, there was not only an asserted but also an actual liability on the plaintiff in fact and law. It paid on the strength of the certified audit report of the official state agency; it was not required to make any independent investigation or examination.
We concur in the findings and conclusions of the lower court, hold them to be fully sustained by the weight of the evidence and legally correct, and, therefore, conclude that the defendant is liable on her indemnity agreement.
The judgment is affirmed.